## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYREEM RIVERS, | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| SUP'T JAMES WYNDER, ET AL., | : | |
| *Respondents.* | : | **No. 07-CV-1949** |

### RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Rivers, was convicted in 1996 of second degree murder, robbery, theft, and receiving stolen property following a non-jury trial in the Court of Common Pleas of Philadelphia. Following his conviction, the trial court sentenced him to lifetime imprisonment, as required by Pennsylvania law.

The charges, and Rivers's conviction, were the products of a purse-snatching gone awry: Rivers, who was hanging around the lobby of a South Philadelphia bank (and had been told by a security guard to move along), watched an 85-year-old woman named Mary Tonzola cash a check and put the cash in her purse. No. 4152 Phila. 1997, slip op. (Pa. Super. Ct. July 30, 1999) (attached as Exhibit A). Rivers waited for her to leave the bank, followed her and, as she started walking up the front steps to her nearby home, grabbed her purse so forcefully that she was knocked to the sidewalk, sustaining multiple fractures of her face, neck, nose, and hands. *See* Ex. A at 1. Although she was rushed to the hospital, and while still conscious was able to tell police officers what had happened, she lost consciousness later that day and never recovered. *See id.* She died within two weeks of the date that Rivers robbed her; there is no question that the injuries she sustained were the cause of her death. *See id.*

A mail carrier named Thomas Antonelli saw the entire crime from his mail truck (*see id.* at 1-2); after seeing the robbery, he attempted to use his truck to block Rivers in and prevent him from fleeing. He described the robber as a black teenager, approximately 5'5" to 5'7" in height (Rivers is indeed approximately 5'5" in height, *see* www.cor.state.pa.us/inmatelocatorweb/), wearing a white and blue baseball cap, a denim jacket, and nylon pants. *See* Ex. A at 1-2.

A Philadelphia police officer named Steven Gormley, who knew who Rivers was, recognized Rivers from photographs taken by the bank's security cameras minutes before the robbery. *See id.* at 2. Shortly afterward, Officer Gormley asked an informant whether he knew of anyone in the neighborhood who had been snatching purses; the informant told Officer Gormley that "T" was the only person in the neighborhood who, as far as the informant was aware, was snatching purses. *See id.* Officer Gormley recognized "T" as Rivers's nickname. *See id.*

Shown a photographic array that included Rivers's photograph, Antonelli, the mail carrier, told the police detectives that he did not think that *any* of the photographs looked particularly like the person who he saw commit the robbery, although he selected Rivers's photograph as the one that resembled the robber most closely and said that he would be able to identify the robber with certainty if he saw him in person. *See id.* (The detectives did not tell Antonelli the name or identity of the person whose photograph he had selected.)

The police subsequently obtained a search warrant for the home where Rivers lived with his mother. After knocking repeatedly at the front door (while repeatedly shouting "police!") for several minutes, with no response, the officers executing the warrant pried

upon the latch of the outside storm door but did not open the inside wooden front door to the house, which remained locked. *See id.* Rivers's mother finally yelled that she was coming and opened the door. *See id.*

The police officers then explained that they had a search warrant and asked each of the house's occupants to gather in the living room. *See id.* When Rivers appeared, the police officers arrested him. *See id.* at 3. During their search of the house, the officers seized from Rivers's bedroom a blue baseball cap and nylon sweat pants. *See id.* (The officers also recovered a .22 caliber rifle from which the serial number had been obliterated or removed.)

Rivers was then taken to police headquarters, where a police detective named Leon Lubiejewski advised him of his rights to remain silent and to counsel in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966). *See id.* Rivers waived his right to remain silent and admitted to committing the crime after he was confronted with photographs from the bank's security camera showing him loitering outside the bank right before the robbery. *See id.* Detective Lubiejewski transcribed the questions and answers and Rivers signed the bottom of each page of the confession. *See id.*

Before trial, Rivers moved to suppress the evidence recovered from his mother's house in the course of the search and also moved to suppress his statement to police. The motion to suppress was denied, and Rivers was convicted following the ensuing non-jury trial. Because the same judge who heard the pretrial motion to suppress presided over the non-jury trial, the prosecution and defense counsel stipulated that the trial judge could consider for purposes of the trial the evidence adduced at the pretrial motion hearing, including the identification of Rivers by the witness, Antonelli, evi-

3

dently on the theory that it would make little sense to force the same witnesses to re-appear and repeat the testimony they had just given before the same judge at the hearing. N.T. 9/15/97, at 33-34.

On direct appeal, Rivers, represented by the same attorney, contended (i) that the trial court erroneously failed to suppress evidence based on a defective search warrant; (ii) that the trial court erroneously denied his motion to suppress evidence and statements made following his arrest (on the theory that the arrest was illegal because it was not authorized by a warrant or exigent circumstances); and (iii) that the trial court erroneously failed to suppress evidence seized during the search (on the theory that the search was executed improperly). The Superior Court rejected all three contentions and affirmed Rivers's conviction. *See* Ex. A.

Specifically, the Superior Court rejected claim (i) on the merits, concluding that the facts "viewed in their totality, clearly establish[ed] probable cause," that "to hold otherwise belies common sense," and that the trial court properly denied [Rivers's] challenge to the warrant." Ex. A at 5. The Superior Court concluded that claim (ii) was waived, i.e., forfeited because it was not properly preserved for appeal and also concluded, as an alternative basis for its decision, that the claim would fail on the merits even if it had been properly preserved. Ex. A at 6. Finally, the Superior Court rejected claim (iii) on the merits. Ex. A at 7-8. The Supreme Court of Pennsylvania declined a request by Rivers for discretionary review. 749 A.2d 469 (Pa. Jan. 4, 2000) (table).

Rivers subsequently filed an application for relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541-9546, which the trial court denied. *See* No. 9607-0322, slip op. (Ct. Com. Pl. Phila. County Jan. 27, 2004) (attached as Exhibit B). Follow-

ing some skirmishing about Rivers's representation on appeal (culminating in a remand by the Superior Court so that the trial court could determine whether Rivers truly wished to proceed *pro se* on appeal, No. 633 EDA 2004, slip op. (Pa. Super. Ct. Nov. 4, 2005) (attached as Exhibit C)), and the subsequent appointment of new postconviction appellate counsel), the Superior Court affirmed the denial of postconviction relief. No. 633 EDA 2004, slip op. (Pa. Super. Ct. Aug. 30, 2006) (attached as Exhibit D).

In affirming the denial of postconviction relief, the Superior Court considered and rejected claims (i) that trial and appellate counsel was constitutionally ineffective for failing to call Rivers's grandmother and a family friend as witnesses; (ii) that trial and appellate counsel was ineffective for failing to properly preserve a claim that Rivers's arrest was made without probable cause; (iii) that trial and appellate counsel was ineffective for failing to preserve a challenge to the in-court eyewitness identification of him by Antonelli, the mail carrier who witnessed the robbery; and (iv) that trial and appellate counsel were ineffective for failing to preserve a claim that the identification of him by Antonelli was impermissibly suggestive. The Supreme Court of Pennsylvania declined review. 918 A.2d 744 (Pa. Jan. 23, 2007).

This application for a writ of habeas corpus followed. Depending on the date it was deposited in the prison's internal mail system, see 28 U.S.C. *foll*. § 2254, R. 3(d), it appears to have been filed on or about May 14, 2007. Rivers later filed a supporting brief.

Rivers is asserting:

(i) that trial and appellate counsel rendered constitutionally ineffective assistance of counsel by failing to interview and present the testimony of his grandmother and a friend of his family, both of whom Rivers asserts would have established an "alibi" that would have established his "actual innocence," (Br. in Supp. of Pet. at 1);

(ii) that trial and appellate counsel rendered constitutionally ineffective assistance of counsel "based on his failure to squarely present and/or preserve [his] [Fourth] Amendment contention that his arrest was illegal and without probable cause; whereas the state has not provided [him] a full and fair hearing on the merits of this [Fourth] Amendment claim" (Br. in Supp. of Pet. at 9);

(iii) that the trial court "erred and abused [its] discretion when it failed to suppress [an] involuntary coerced confession which had been unconstitutionally obtained in violation of [his] Fifth Amendment rights against self-incrimination," (Br. in Supp. of Pet. at 14); and

(iv) that trial and appellate counsel "failed to render effective assistance of counsel under the Sixth Amendment based on his failure to squarely present and/or address [his] meritorious contention that the trial court erred in denying [his] motion to suppress an illegal in-court identification and/or that [he] was made the subject of an unduly/suggestive [sic] identification which violated his constitutional rights to due process." (Br. in Supp. of Pet. at 21.)

In his habeas corpus application, Rivers also asserted (v) that trial counsel rendered ineffective assistance by giving him deficient advice about whether to waive his right to trial by jury, and (vi) that trial counsel rendered ineffective assistance by effectively confessing Rivers's guilt of the robbery during his closing remarks without Rivers's consent. These last two claims are not developed in Rivers's 30-plus-page supporting brief and thus appear to have been abandoned. *See Fry v. Pliler*, No. S011580, 2004 WL 5264357, at *35 (E.D. Cal. Aug, 27, 2004) (claim mentioned in petition but not developed in brief deemed abandoned or waived), *aff'd*, 209 F. App'x 622 (9th Cir. 2006) (non-precedential), *aff'd*, 127 S. Ct. 2321 (2007); *Gary v. Schofield*, 336 F. Supp. 2d 1337, 1347 n.10 (M.D. Ga. 2004) (claims raised in petition but not briefed deemed abandoned); *Hulbert v. Iowa*, No. 95-CV-2032, 2001 WL 34152096, at *1, *5 n.8 (N.D. Iowa June 27, 2001) (same); *Caibaiosai v. Barrington*, 643 F. Supp. 1007, 1008 n.1 (W.D. Wis. 1986) (same). Abandonment aside, they do not appear to have been fairly pre-

6

sented to Pennsylvania's state courts. (Because these claims appear to have been aban-
doned, Respondents do not address them in this brief, except to note briefly that they
appear to be both abandoned and defaulted. Respondents stand ready to address these
claims in full if called upon by the Court to do so.)

## STANDARD OF REVIEW

Habeas corpus relief in federal court is ordinarily available only when federal claims have been adjudicated by the state court in a manner:

> (1) contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) result[ing] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established Federal law, as determined by the Supreme Court of the United States" means "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). A petitioner "must identify the relevant 'clearly established Federal law' upon which his claim depends," which is to say that he "must identify the Supreme Court precedent that provides the foundation for his claim." *Henry v. Horn*, 218 F. Supp. 2d 671, 695 (E.D. Pa. 2002); *see also, e.g.*, *Kane v. Garcia Espitia*, 126 S. Ct. 407, 407-08 (2005) (per curiam) (summarily reversing appellate decision that could not identify a Supreme Court decision "clearly establish[ing]" the right held violated); *Bocian v. Godinez*, 101 F.3d 465, 471 (7th Cir. 1996) (petitioners "must be able to point to an authoritative decision of the Supreme Court in order to secure a writ").

"Contrary to" means a state court's arrival at a conclusion opposite to one reached by the Supreme Court of the United States on a question of law or on facts materially indistinguishable from those of a relevant Supreme Court precedent. *See, e.g.*, *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). "Unreasonable application" means correct identification of the governing legal rule followed by an objectively unreasonable appli-

cation of the rule to the facts of the case. *See, e.g.*, *Woodford v. Visciotti*, 537 U.S. 19, 25-26 (2002) (per curiam). The state court need not have cited (or even known of) the relevant Supreme Court decisions; all that is necessary is that the state court's decision not contradict them. *See, e.g.*, *Early*, 537 U.S. at 8.

A state court's rejection of a federal claim is generally not reviewable if the rejection rests on independent and adequate state law grounds, such as failure to comply with the state's procedural rules for the presentation of claims and arguments. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). To obtain review, the petitioner must show cause and prejudice to excuse the default, or that a "miscarriage of justice" would occur if the default were not disregarded and the merits addressed. The availability of the "miscarriage of justice" exception hinges on a showing of actual innocence, i.e., "new reliable evidence," such as "scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that would make it more likely than not that "no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324, 329 (1995).

To establish a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must demonstrate both that counsel's performance was so seriously and unreasonably deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's deficient performance was so prejudicial "as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to raise or preserve an argument or objection that is devoid of merit cannot be considered deficient or prejudicial. *See, e.g.*, *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

## DISCUSSION

I. Ineffective assistance—failure to interview and present "alibi" witnesses

Rivers's first claim is that his trial and appellate counsel was constitutionally inef-
fective for failing to interview and present the testimony of his grandmother, Margie
Rivers, and a family friend named Barbara Thompson. According to Rivers, he told trial
counsel about his grandmother and about Ms. Thompson, and trial counsel asked Riv-
ers "what role would the testimony of these two witnesses play when and/or if, the case
went to trial?" (Br. in Supp. of Pet. at 3), but then declined to interview them or call
them as witnesses at trial after hearing Rivers's explanation of what they would testify.

Rivers asserts that his grandmother and Ms. Thompson would have provided a le-
gitimate explanation for him to have been at the bank. Rivers's grandmother would
have testified that members of Rivers's family had planned to meet Rivers at or near
the bank on the afternoon of the robbery because Rivers's great-grandmother "had
something for him," but that they were ultimately unable to get to the bank because
they had problems with their car on the day in question. *See* Ex. G to Br. in Supp. of
Pet. at 2-3. Ms. Thompson would have testified that she saw Rivers outside the bank,
that Rivers said that he was waiting for his grandmother (with whom Ms. Thompson
was friends), and that she spoke to Rivers for "about 15 to 20 minutes" but left after
Rivers's grandmother did not show up. *See* Ex. I to Br. in Supp. of Pet. (During the post-
conviction appellate proceedings, Rivers provided a second statement from Ms. Thomp-
son in which Ms. Thompson said that she recalled seeing Rivers get into his car and
drive away. Putting to one side the questionable consistency of the two statements, the
Superior Court concluded that the second statement, not having been presented to the

trial court during the postconviction proceedings, was not properly before it. Ex. D at 4. In any event, the Superior Court concluded, Ms. Thompson's second statement, like her first statement, was not exculpatory.)

A. Partial procedural default

Insofar as this claim is based on Ms. Thompson's second statement, the claim is procedurally defaulted. The Superior Court concluded, on the basis of Rule 1921 of the Pennsylvania Rules of Appellate Procedure, which confines the record on appeal to the record presented to the trial court, that Ms. Thompson's second statement was not properly before it because it was not presented to the trial court during the postconviction proceedings. There is no suggestion that Pennsylvania's rule restricting the record on appeal to the record presented to the trial court is not consistently enforced or is otherwise "inadequate" to bar federal review in the absence of cause and prejudice that would justify disregarding the procedural default. *Cf. Tuten v. Tennis*, No. 06-CV-1872, 2007 WL 2221419, at *3 (E.D. Pa. July 31, 2007); *Abney v. Vaughn*, No. 03-CV-0066, 2003 WL 22436282, at *11 (E.D. Pa. Oct. 24, 2003).

Moreover, there is no evident explanation at all for why Ms. Thompson's second statement was not presented to the trial court, much less why it could not have been presented. Constitutionally ineffective assistance of counsel can constitute "cause" to justify disregarding a procedural default, but in the absence of a constitutional right to postconviction counsel, alleged ineffectiveness of postconviction counsel cannot constitute "cause." *See* 28 U.S.C. § 2254(i); *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991); *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002). Ms. Thompson's statement does not constitute new, reliable, previously unavailable evidence that would make it

more likely than not that no factfinder, acting rationally, would find Rivers guilty. *Cf. Schlup v. Delo*, 513 U.S. 298, 324, 329 (1995).

B. Merits

The state courts adjudicated this claim on the merits and rejected it—including the claim insofar as it relied on Ms. Thompson's second statement. (State courts are permitted to reject claims on state-law procedural grounds but also hold, in addition or in the alternative, that the claim would have lacked merit in any event. When they do so, the alternative ruling on the merits is reviewable only under the standard set forth in 28 U.S.C. § 2254(d). *See, e.g.*, *Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 2986 (2006); *Caraway v. New York*, No. 05-CV-2913, 2005 WL 3164249, at *1 (E.D.N.Y. Nov. 29, 2005); *Pearson v. Greiner*, No. 02-CV-10244, 2004 WL 2453929, at *13 (S.D.N.Y. Nov. 3, 2004).) The state courts' rejection of this claim was plainly not contrary to, or an unreasonable application of, Supreme Court precedent or the result of an unreasonable determination of the facts.

Although Rivers argues that his grandmother and Ms. Thompson would have provided him with an alibi, the state courts reasonably concluded that, based on their statements, they could not have done so. An alibi affirmatively accounts for the defendant's whereabouts at the time the crime was committed, the "where" being somewhere other than the vicinity of where the crime occurred; if the alibi testimony is truthful and accurate, an alibi will make it impossible for the defendant to have committed the crime. *See, e.g.*, *Commonwealth v. Hall*, 867 A.2d 619, 636-37 (Pa. Super. Ct. 2005) (citing cases), *appeal denied*, 895 A.2d 549 (Pa. 2006).

The trial court—the same judge who sat as the trier of fact during Rivers's trial—concluded that the testimony of Rivers's grandmother and Ms. Thompson as proffered in the statements presented to it were not impressive. *See* Ex. C. Far from presenting an alibi, the trial court concluded, the affidavits did little more than place Rivers at the scene of the crime (or so near to it that he easily could have committed the crime).* See *id.*

1. Prejudice

Given that the same judge who sat as the trier of fact at Rivers's trial considered and rejected Rivers's ineffective assistance claim, little speculation about the likely effects of the statements on the outcome of Rivers's trial is required; the views of the trial judge who sat as the finder of fact are entitled to great, even if not absolute, deference. The trial judge found that the testimony of Rivers's grandmother and Ms. Thompson, as proffered in the statements presented to it, did not establish an alibi (and, indeed, merely placed Rivers near the scene of the crime), were not impressive, and would have had no effect on the outcome of Rivers's trial. *See* Ex. C. That conclusion was reasonable, and the Superior Court's decision to uphold the trial court's conclusion was likewise reasonable. *Cf., e.g.*, *Jackson v. DiGuglielmo*, No. 03-CV-5398, 2004 WL 2064895, at *11 (E.D. Pa. Sept. 14, 2004) (counsel not ineffective for failing to request alibi instruction because evidence that petitioner was within four blocks of the scene of the

---

* Although not necessary to consider to resolve Rivers's claim, the statement by Rivers's grandmother, assuming for current purposes that it is accurate and truthful, suggests that the never-explicitly-described "something" that Rivers's great-grandmother planned to give him, and that Rivers was expecting to receive, was money. (Why else meet at a bank?) If it was money—again assuming for current purposes that his grandmother's statement was accurate and truthful rather than just a grandmother's wishful thinking—an obvious reason why the grandmother's story would likely have done more harm than good is that it would have suggested that Rivers had gone to the bank expecting to receive money from family members but, after they failed to show up, determined to obtain money another way.

crime around the time the crime occurred did not establish an alibi), *approved and adopted*, No. 03-CV-5398, 2006 WL 1147517 (E.D. Pa. Apr. 27, 2006).

2.  Unreasonably deficient performance

Except for certain fundamental decisions, such as the decision of whether to plead guilty or to stand trial, whether to testify on one's own behalf, and whether to appeal following a conviction, matters of litigation strategy, including which witnesses to call, are entrusted to counsel's judgment. *See, e.g.*, *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996); *Sanchez v. Tennis*, No. 04-CV-4005, 2005 WL 645926, at *9 (E.D. Pa. Mar. 17, 2005); *Reinert v. Larkin*, 211 F. Supp. 2d 589, 599 (E.D. Pa. 2002), *aff'd*, 379 F.3d 76 (3d Cir. 2004), *cert. denied*, 546 U.S. 890 (2005). Counsel's strategic decisions, including decisions that a proposed witness's testimony should not be presented, or that additional investigation as to whether to present that witness's testimony is not a worthwhile use of scarce trial preparation time, are strongly presumed to have been reasonable. *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984) (strategic choices made after less than complete investigation are reasonable to the extent that reasonable professional judgment supports the decision not to investigate further). Given the weakness of the testimony counsel was supposedly ineffective for not presenting, counsel's decision not to investigate it further and present it at trial cannot conscientiously be considered unreasonably deficient. *See, e.g.*, *Bonilla v. Portuondo*, No. 00-CV-2369, 2004 WL 1782174, at *10 (S.D.N.Y. Aug. 9, 2004) (counsel not ineffective for failing to interview individual who could have led counsel to purported alibi witness who "would only have established that the petitioner was near the crime scene" and thus "in no way provide[d] an alibi").

14

II.  Ineffective assistance of counsel—failure to "squarely present and/or preserve" Rivers's Fourth Amendment claim that his arrest was illegal and without probable cause

Rivers believes that the police lacked probable cause to enter his mother's house and to arrest him.[**] On direct review, the Superior Court concluded that his claim that the police lacked probable cause was not properly preserved because Rivers's attorney abandoned it at the pre-trial hearing on Rivers's motion to suppress evidence, and that Rivers's claim that the police should have obtained an arrest warrant was not properly preserved because Rivers failed to present it at all in the trial court. Ex. A at 5-6. In any event, the Superior Court held, the claims would have lacked merit because the police had a valid search warrant and were thus entitled to be in the house where they found and arrested Rivers. *See id*. at 6. Moreover, the Superior Court held, even if the arrest had been illegal, it would not follow that Rivers's subsequent confession, outside the house, was subject to suppression as "fruit of the poisonous tree." *See id*. at 6-7.

When Rivers argued during the postconviction proceedings that counsel was constitutionally ineffective for failing to adequately present and preserve the claims that his arrest was illegal and without probable cause, the state courts rejected the claim, noting that they had already held on direct appeal that the underlying claims would have been devoid of merit, even if they had been adequately preserved. Ex. D. at 5.

_____

[**] Rivers is correct that the Supreme Court has held that claims that searches of the defendant's home or possessions or the arrest of the defendant violated the Fourth Amendment are not cognizable during habeas corpus proceedings, as long as there was a full and fair opportunity to raise the claims in the state court proceedings, *see Cardwell v. Taylor*, 461 U.S. 571 (1983) (per curiam); *Stone v. Powell*, 428 U.S. 465, 494 (1976), although Rivers confuses a full and fair *opportunity* to raise a claim in state court with an actual hearing on the claim in state court. *Stone*, 428 U.S. at 494-95; *Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994). Nevertheless, even though claims of Fourth Amendment error are generally not cognizable during federal habeas corpus proceedings, claims that counsel was constitutionally ineffective for failing to raise, preserve, or adequately litigate a Fourth Amendment claim are cognizable. *See Kimmelman v. Morrison*, 477 U.S. 365, 375-77 (1986).

The state courts' adjudication of Rivers's claim of ineffective assistance was correct, and in any event clearly not contrary to, or the result of an unreasonable application of, clearly established Federal law. In Pennsylvania, an arrest warrant is not necessary if the police have probable cause to believe that a felony has been committed and that the defendant committed it. *See* Pa. R. Crim. P. 502. The process due an arrestee is simply a prompt post-arrest hearing so that a judge can determine whether there is indeed probable cause to believe that the arrestee committed a felony. *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220, 228-29 (3d Cir. 2001).

Although, in the absence of exigent circumstances or other recognized exceptions to the general rule, the Fourth Amendment of course bars the police from barging into one's house (or a house owned by the defendant's mother if the defendant still lives there) without a warrant, the police had a warrant. It does not matter that the warrant was a search warrant, rather than an arrest warrant. What the Fourth Amendment was designed to combat was the unauthorized invasion of the privacy of individuals' possessions and dwellings. Once the police obtained a warrant to search his mother's home, their presence was no longer unauthorized. The search warrant allowed them to enter Rivers's mother's house. After the police entered Rivers's mother's house to search for evidence, as they were permitted to do, they were entitled to arrest him. They were not required to pretend that they did not see him and leave, or to or camp out on his mother's doorstep until Rivers either walked out the door himself or until a new complement of police officers arrived brandishing a new warrant, specifically authorizing Rivers's arrest. *See, e.g.*, *United States v. Winchenbach*, 197 F.3d 548, 552-54 (1st Cir.

1999) (collecting cases); *United States v. Bethea*, No. 07-CR-0003, 2007 WL 3025042, at *3 (D. Vt. Oct. 12, 2007).

The Superior Court was also correct that even if the arrest of Rivers in his mother's house was unlawful, it would not follow that the statement he later gave to the police, at the police station, outside his mother's house, was subject to suppression as "fruit of the poisonous tree," if his later statement to the detectives at the police station was voluntary, which the state courts found it was. *See Oregon v. Elstad*, 470 U.S. 298, 306-07, 314 (1985).

Because the Superior Court correctly, and in any event reasonably, concluded that the underlying claims of Fourth Amendment error were devoid of merit, the Superior Court's determination that counsel could not be deemed ineffective for failing to adequately present or preserve the claims was also correct (and, in any event, reasonable).

## III.  Trial court error—failure to suppress confession

Rivers's next claim is that the trial court "erred and abused [its] discretion when it failed to suppress [an] involuntary coerced confession which had been unconstitutionally obtained in violation of [his] Fifth Amendment rights against self-incrimination." Br. in Supp. of Pet. at 5-6. He argues that the police officers to whom he confessed failed to give him a "full" set of warnings in accordance with the rule announced in *Miranda v. Arizona*, 384 U.S. 436 (1966), and that they tricked him into signing blank pages onto which the officers later made up a confession purportedly given by him. (The allegations are, of course, of dubious consistency: why bother trying to trick a suspect with an incomplete set of *Miranda* warnings—why not give all of the warnings, or even

no warnings at all—if you are just going to fabricate a confession by the defendant anyway?)

After conducting a hearing, the trial court found as a fact that the detectives had provided *Miranda* warnings orally, although not in writing.

Rivers appears to be arguing (*see* Br. in Supp. of Pet. at 15) that police officers must give *Miranda* warnings at the time of arrest. That is not correct; police officers do not have to—and in fact ordinarily do not—give the warnings at the time of the arrest. The need to warn a suspect or arrestee comes into play only when the police ask questions (or make statements that, even if not phrased in the form of a question are functionally questions because they are designed to elicit a potentially incriminating response). *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *United States v. Calisto*, 838 F.2d 711, 716-17 (3d Cir. 1988). Rivers also appears to assume that the fact that he was arrested in his home means that the police officers were required to give him *Miranda* warnings in his home, which is also not correct. Again, warnings are given only before the police start asking questions. Moreover, as noted above, if the detectives gave Rivers his *Miranda* warnings before questioning him, as the trial court found as a fact that the detectives did, and Rivers's confession was voluntary, as the state courts found Rivers's was, his confession would have been properly admissible, and not excluded as "fruit of the poisonous tree," even if Rivers's arrest had been illegal or improper (which it was not in any event). *See, e.g.*, *United States v. Jones*, 214 F.3d 836, 838-39 (7th Cir. 2000).

Rivers argues that, even when the detectives did start asking questions, he had still not been given a "full" set of *Miranda* warnings. He does not explain how they were in-

complete and, in any event, the trial court found as a fact—having had the opportunity to assess the credibility of Rivers and the detective who recorded his statements—that Rivers was adequately warned. N.T. 9/15/97, at 5-6. Findings of fact by the state courts must be treated as correct during federal habeas corpus proceedings unless they are shown by clear and convincing evidence to be incorrect. *See* 28 U.S.C. § 2254(e)(1).

If Rivers is suggesting that the officers should have been required to make Rivers acknowledge having received each of the warnings in writing, the rule announced in *Miranda* does not require that the warnings be given or acknowledged in writing. Oral warnings by the police, and oral waivers of the right to counsel, are sufficient as long as the substance of the warnings has been reasonably conveyed. *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979); *United States v. Saenz*, 474 F.3d 1132, 1136-37 (8th Cir. 2007).***

## IV. Ineffective assistance—eyewitness identification

The last claim that Rivers has briefed is that trial counsel rendered constitutionally ineffective assistance because he failed "to squarely present and/or address" his contention that the trial court erred in denying his motion to suppress the in-court eyewitness identification of him by mail carrier Antonelli.

Rivers notes that Antonelli did not identify him when shown a series of photographs that included a photograph of him. Antonelli indicated that he did not think that any of

---

*** To be sure, the trial judge, even in concluding that there was no violation of the *Miranda* rule, expressed displeasure that the detectives did not ask Rivers to acknowledge and waive his right to counsel in writing. The trial court indicated that obtaining written acknowledgments and waivers of rights makes it much easier to determine, after the fact, that the defendant knowingly and voluntarily waived his rights, and that the absence of a written acknowledgment and waiver makes it more difficult. N.T. 9/15/97, at 5-6. Nevertheless, the trial court found as a fact that in this case, the detectives provided *Miranda* warnings, even if orally rather than in writing.

the photographs particularly resembled the robber, although he noted that the photograph of Rivers was the closest (the detectives did not share Rivers's name or any other information about him with Antonelli), and that he would be able to identify the robber if he saw him in person.

Before the trial, when Rivers's case was listed for a preliminary hearing, Antonelli had been subpoenaed and came to court as directed. Antonelli had not spoken to the prosecutor about why he had been subpoenaed, but assumed that he was going to be asked to testify about what he saw on the date of the robbery. N.T. 9/11/97, at 148. The prosecutor who handled the preliminary hearings in that courtroom on the date in question testified at the pretrial hearing that he had just been handled the case file for Rivers's case and did not realize that there were any eyewitnesses—he thought that the only relevant evidence for the hearing was Rivers's confession. N.T. 9/11/97, 175-77. Antonelli, who was never called to testify, simply sat in the courtroom and watched the prosecutor handle a number of preliminary hearings in various cases, involving a number of different defendants, and then left the courtroom when all of the proceedings ended. N.T. 9/11/97, 143, 145-47. After leaving the courtroom, Antonelli remarked that he had just seen the person who committed the robbery in the courtroom. N.T. 9/11/97, 148. (Although the subpoena issued to Antonelli provided Rivers's name—which was the first time Antonelli saw or heard it—Antonelli testified that he did not recall hearing Rivers's name being called before Rivers was brought into the courtroom. N.T. 9/11/97, at 158-59.)

Rivers's argument is that the prosecution effectively conducted an impermissible "show-up" that allowed Antonelli to see him in court and that seeing Rivers in court

contaminated Antonelli's ability to later reliably identify him at trial, because there was an unacceptably high risk that Antonelli simply recognized Rivers from seeing him in court, even though Antonelli may have thought that he recognized Rivers from the day of the robbery.

A.  Procedural default

The Superior Court concluded that this claim was waived, i.e., forfeited, because it was not raised in the trial court. There is no suggestion that Pennsylvania's rule requiring appellate claims to have been raised below is not consistently enforced or is otherwise "inadequate" to bar federal review in the absence of a showing of cause and prejudice. (Any alleged ineffectiveness by postconviction counsel, as noted above, cannot constitute "cause" to justify disregarding a procedural default. In addition, the state courts also held that the underlying claim would have lacked merit even if it had been raised in the trial court, a conclusion that, if reasonable, would foreclose a finding that the default resulted in actual prejudice.)

B.  Merits

In any event, the Superior Court concluded that the claim would have lacked merit even if it had been properly preserved for review. Relying on its earlier decision in *Commonwealth v. Edwards*, 762 A.2d 382 (Pa. Super. Ct. 2000), which in turn analyzed and discussed the relevant Supreme Court precedents, *Manson v. Brathwaite*, 432 U.S. 98 (1977), and *Neil v. Biggers*, 409 U.S. 188 (1972), the Superior Court concluded that Antonelli had an easily sufficient opportunity to have seen the robber at the time of the crime, had described him accurately at the time and, although he did not think that any of the photographs he saw particularly resembled the robber, considered Rivers's pho-

tograph the closest match and expressed certainty that he would recognize the robber if he saw him in person, which he did, less than two weeks after the robbery.

The Superior Court's adjudication of this claim on the merits was well in accord with clearly established Federal law. It considered the factors deemed relevant under the Supreme Court's precedents and its application of those factors, in concluding that the underlying claim of error was devoid of merit, was reasonable. *See, e.g., United States v. McGrath*, 89 F. Supp. 2d 569, 580-81 (E.D. Pa. 2000).

## CONCLUSION

Rivers's claim that counsel was ineffective for not calling "alibi" witnesses is partially procedurally defaulted and, in any event, devoid of merit (including the second statement by Ms. Thompson that was not presented to the trial court). The Superior Court correctly, and in any event, reasonably, rejected Rivers's claim that his arrest was illegal because the police lacked an arrest warrant—because the police had a search warrant—and also correctly recognized that it would not follow that Rivers's subsequent confession at police headquarters would be subject to suppression as "fruit of the poisonous tree" even if the arrest had been improper. The Superior Court's adjudication of Rivers's claim that his confession was coerced and involuntary was correct and, in any event, reasonable given the facts as reasonably found by the state courts on the basis of the record presented in the state court proceedings. Finally, Rivers's claim that counsel was ineffective for not preserving the claim that the trial court should have suppressed the in-court identification of him by Antonelli, the mail carrier, has been procedurally defaulted and the Superior Court's alternative ruling, rejecting the claim on its merits, was well in accord with clearly established Federal law.

Rivers's application for a writ of habeas corpus should be denied without a hearing. In the absence of any substantial showing of the denial of a constitutional right, there is no apparent basis for a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Respectfully submitted,

*/s/ Joshua S. Goldwert*

JOSHUA S. GOLDWERT
Assistant District Attorney

THOMAS W. DOLGENOS
Chief, Federal Litigation Unit

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYREEM RIVERS, | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| SUP'T JAMES WYNDER, ET AL., | : | |
| *Respondents.* | : | **No. 07-CV-1949** |

## CERTIFICATE OF SERVICE

I, Joshua S. Goldwert, hereby certify that on November 5, 2007, a copy of this Response to Petition for Writ of Habeas Corpus was filed electronically with the Court and made available for viewing and downloading via the Court's electronic filing system, and that a copy was served on Petitioner by depositing it in the United States Mail, first-class postage pre-paid, addressed to:

Tyreem Rivers
DK-2865
SCI-Dallas
1000 Follies Road
Dallas, PA 18612

*/s/ Joshua S. Goldwert*
_____
Joshua S. Goldwert
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107