J. A15026/99

742 H2d 1151

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| Appellee | : | PENNSYLVANIA |
| v. | : | |
| TYREEM RIVERS, | : | |
| Appellant | : | No. 4152 Philadelphia 1997 |

Appeal from the Judgment of Sentence entered
September 16, 1998, in the Court of Common
Pleas of Philadelphia County, Criminal
No. 9607-0322.

BEFORE: HUDOCK, EAKIN and MUSMANNO, JJ.

MEMORANDUM:                                    FILED JUL 3 0 1999

Tyreem Rivers appeals from the judgment of sentence entered following his convictions for second degree murder, robbery, theft and receiving stolen property. We affirm.

On June 3, 1996, appellant walked into a Philadelphia bank and watched an 85-year-old woman cash a check and put money in her purse. Appellant waited outside for the woman, who left a few minutes later. Appellant followed her and, as she went up the front steps to her home, he grabbed her purse with such force she fell to the sidewalk.

The victim was rushed to the hospital, where she was treated for multiple fractures of her face, neck, nose and hands. Still conscious, she was able to tell police what happened. Later that day, she slipped into a coma and never recovered. She died on June 16, 1996.

A mail carrier witnessed the entire crime from his truck about ninety feet away, and described the assailant as a black teenager, about 5'5" to

J. A15026/99

5'7" tall, wearing a white and blue baseball cap, a denim jacket and nylon pants. In addition, police obtained pictures taken by a bank security camera right before the crime; the pictures revealed a young black man, matching the mail carrier's description, hanging around the front of the bank shortly before the assault. Officer Steven Gormley identified the man in the photographs as appellant, whom he knew from prior encounters.

Shortly after this identification, Officer Gormley spoke to a police informant who explained a man named "T" had recently been snatching purses in the neighborhood. The officer knew "T" was the nickname of appellant, and included his picture in a photo array. When shown the array, the mail carrier pointed out appellant's picture and said it most closely resembled the assailant, but added he could not be sure unless he saw him in person.

Based on this information, police obtained a search warrant for the house where appellant lived with his mother. On June 18, 1996, the police went to the premises and repeatedly knocked on the front door, yelling "Police!" for several minutes. After receiving no response, they pried open the latch of the storm door; the wooden front door remained locked and intact. At this point, appellant's mother yelled she was coming and opened the door.

Upon entry, the police explained they had a search warrant and asked all the occupants of the house to gather in the living room. Appellant

J. A15026/99

appeared and was arrested. Meanwhile, the police searched the house and seized various incriminating items, including the clothing appellant wore on the day of the crime.

Appellant was taken to the police station, where Detective Leon Lubiejewski informed him of his ***Miranda*** rights. Appellant waived his right to remain silent; after being shown the photos of himself loitering outside the bank, he admitted the crime. Detective Lubiejewski transcribed the questions and answers that made up the confession, and appellant signed the bottom of each page. Appellant was charged with second degree murder, robbery, theft and receiving stolen property.

Appellant filed a motion to suppress evidence. Following a hearing, this motion was denied and a bench trial ensued. The trial court found appellant guilty as charged and imposed a mandatory sentence of life imprisonment. On appeal, appellant presents the following issues:

I.  Whether the trial court erroneously failed to suppress evidence based on a defective search warrant?

II. Whether the trial court erroneously denied appellant's motion to suppress evidence and statements made following an illegal arrest where no probable cause or exigent circumstances existed for the warrantless arrest?

III. Whether the trial court erroneously failed to suppress evidence seized pursuant to an unconstitutional search due to the defective execution of a search warrant?

The standard governing review of a denial of a motion to suppress is well established:

J. A15026/99

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

**Commonwealth v. Carlson**, 705 A.2d 468, 469 (Pa. Super. 1998) (citations omitted).

Appellant first contends the search warrant was defective and evidence seized as a result of the search should have been suppressed. "The standard for evaluating whether probable cause exists for the issuance of a search warrant is the 'totality of the circumstances' test as set forth in **Illinois v. Gates**, 462 U.S. 213 (1983), and adopted by [the Pennsylvania Supreme Court] in **Commonwealth v. Gray**, 503 A.2d 921, 922 (Pa. 1985)." **Commonwealth v. Jones**, 668 A.2d 114, 116 (Pa. 1995). "A magistrate is to make a 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" **Id.**, at 116-17 (citations omitted).

Taking a common-sense view of the facts before us, we find the magistrate had a basis to conclude probable cause existed. The affidavit

J. A15026/99

indicates: (1) the mail carrier's eyewitness description; (2) bank security photographs of appellant, matching this description; (3) a police informant's claim "T" was snatching purses in the neighborhood; (4) a police officer's identification of "T" as appellant; and (5) the mail carrier's identification of appellant's photograph as closely resembling the person he saw commit the crime. These facts, viewed in their totality, clearly establish probable cause; to hold otherwise belies common sense. The trial court properly denied appellant's challenge to the warrant.

Appellant next alleges his arrest was improper because it was not based upon probable cause, and was improperly executed without an arrest warrant. As such, he claims the trial court should have suppressed his written and oral confession given during the police station interview.

This Court will not review issues which have not been squarely presented to and addressed by the trial court. **Commonwealth v. Lawson**, 549 A.2d 107, 110 (Pa. 1988) (appellate courts should consider on appeal only those issues that have been properly raised by the parties); **Commonwealth v. Corley**, 638 A.2d 985, 990 (Pa. Super. 1994) (appellate court cannot reverse trial court in absence of ruling on specific issue), *appeal denied*, 647 A.2d 896 (Pa. 1994). While appellant's pre-trial motion briefly included an assertion he had been arrested without probable cause, he dropped this claim at the suppression hearing. There, he raised only a challenge to the search warrant, and did not argue the arrest was not

- 5 -

J. A15026/99

supported by probable cause. Appellant did not request clarification or file a post-sentence motion raising this issue.

Likewise, appellant's claim the police should have procured an arrest warrant was not raised at the suppression hearing or in a post-trial motion. In fact, this argument was never mentioned until appellant's brief now before this Court. Indeed, because the trial court never had an opportunity to address these contentions, they are waived.

Even if these claims were not waived, they are meritless. The probable cause to search sufficed to justify the arrest, and as the crime was felonious, no warrant was required. Further, even if we were to find the arrest unlawful, we cannot agree the confession was "fruit of the poisonous tree." In **Commonwealth v. Bogan**, 393 A.2d 424 (Pa. 1978), the Supreme Court described four factors to be considered in determining whether a confession, made after an unlawful arrest, should be suppressed. These include: (1) whether **Miranda** warnings were given; (2) the temporal proximity of the arrest and confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. **Id.**, at 427. The Court also stressed "the voluntariness of the statement is, of course, a threshold requirement." **Id.**

Appellant received a full set of **Miranda** warnings, and voluntarily chose to waive these rights. The actions of the police were not offensive; they were armed with reliable information from which they logically deduced

J. A15026/99

appellant's participation in the crime, and they were lawfully present in his home, pursuant to a search warrant, when they made the arrest. Certainly, it was a reasonable choice, not a coerced one for appellant, faced with the damning evidence of the photos, to give police his side of the story. **See Commonwealth v. McFeely**, 502 A.2d 167, 170-71 (Pa. 1985) (where suspect was confronted with evidence against him prior to his confession, this represented "intervening circumstance" which would remove the taint of an illegal arrest). In light of these circumstances, we find appellant's statement was properly admitted at trial, even if his arrest had been unlawful.

Appellant lastly contends the police failed to properly "knock and announce" when executing the search warrant. The "knock and announce" rule requires a law enforcement officer executing a search warrant, before entry, to make a "reasonable effort to give notice of his identity, authority and purpose to any occupant of the premises." Pa.R.Crim.P. 2007(a). Furthermore, an "officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose" and if not admitted after a "reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search." Pa.R.Crim.P. 2007(b), (c).

There can be no violation of the "knock and announce" rule when there is no forced entry into the house. **See Commonwealth v. McDonnell**, 516

J. A15026/99

A.2d 329, 331 (Pa. 1986) (finding no "knock and announce" violation when police entered an enclosed porch but then knocked and announced and were allowed into the house).  Here, the police officers repeatedly knocked on the door and gave notice of their identity with no response.  After a few minutes, they pried open the latch to the screen door, but did not gain entry in so doing.  Entry was granted by appellant's mother.  Because the police did not force entry into the house itself, there was no violation of the "knock and announce" rule.  Accordingly, the trial court did not err in denying appellant's motion to suppress.

Judgment of sentence affirmed.

J. A15026/99